1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KARL VANDERVALL,

11              Plaintiff,                    No. CIV S-09-1576 DAD P

12        vs.

13   J. FELTNER, et al.,                      ORDER AND

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil

17   rights action pursuant to 42 U.S.C. § 1983.  In his complaint, plaintiff alleges that defendants

18   violated his rights under the First Amendment and the Due Process Clause of the Fourteenth

19   Amendment.

20              On December 18, 2009, defendants moved to dismiss plaintiff's complaint on the

21   grounds that: (1) plaintiff's claims are barred by the favorable termination rule announced in

22   Heck v. Humphrey, 512 U.S. 477 (1994); (2) plaintiff failed to state a cognizable claim under the

23   Due Process Clause; (3) defendant Martel's and Lackner's actions furthered a legitimate

24   penological purpose; and (4) all defendants are entitled to qualified immunity.  Plaintiff has filed

25   an opposition to the motion, and defendants have filed a reply.  In addition, pursuant to court

26   order, defendants have filed a supplemental brief addressing issues raised by their argument

                                                 1

1 seeking dismissal pursuant to <u>Heck</u> in light of plaintiff's sentence.  For the reasons set forth

2 below, the court recommends that defendants' motion to dismiss be granted in part and denied in

3 part.

4 **BACKGROUND**

5 Plaintiff is proceeding on his original complaint against defendants Feltner,

6 Machado, Martel, and Lackner.  In his complaint, plaintiff alleges as follows.  On March 28,

7 2008, plaintiff was given a job assignment as an Enhanced Outpatient Program (EOP) aide and

8 mentor.[1]  Shortly thereafter, plaintiff noticed that two co-workers were subjecting EOP inmates

9 to physical, emotional, and financial abuse.  He brought this to the attention of defendant Feltner,

10 who dismissed plaintiff's concerns and told him to "mind [his] own business."  Moreover,

11 defendant Feltner indicated that one of the co-workers in question was his "inside man" who was

12 given extra leeway.  (Compl. at 3-4.)

13 Having little success with other correctional staff in halting the abuse of EOP

14 inmates, plaintiff sought the help of Recreation Therapist Dru Scott.  Ms. Scott confirmed that

15 she had heard similar reports of abuse from other inmates and that she would take some form of

16 action.  In late September or early October 2008, Ms. Scott issued an internal memo stating that

17 she was disturbed by EOP's unhealthy environment and that remedial action should be taken.

18 Ms. Scott's memo was addressed to EOP staff members and administrators, including defendants

19 Feltner and Machado.  (Compl. at 5, Ex. C.)

20 Defendant Feltner responded harshly to Ms. Scott's memo, convening a meeting

21 where he threatened to fire all EOP aides and mentors if there was another "leak" about inmate

22 abuse.  Defendant Feltner also called plaintiff into his office and alleged that plaintiff was the

23 main suspect behind the memo's complaints.  Thereafter, plaintiff experienced late releases from

24 his cell, repeated cell and body searches and verbal abuse from other correctional staff members.

25 
26 [1] The EOP program provides additional assistance to mentally ill prisoners who are in the custody of the California Department of Corrections and Rehabilitation (CDCR).  (Compl. at 3.)

2

1   (Compl. at 5-6.)

2           Fearing for his safety, plaintiff resigned from his position as an EOP aide and

3   mentor on October 23, 2008.  The following day, plaintiff filed a CDC-602 grievance form in

4   which he reiterated his complaints regarding EOP inmate abuse and indicated his intent to bring

5   the matter before J. Michael Keating.[2]  Plaintiff also mailed a letter detailing the inmate abuse to

6   attorneys at the Prison Law Office in San Quentin, California.  (Compl. at 6-7; Ex. D1.)

7           On November 9, 2008, defendant Feltner escorted plaintiff to the Program Office

8   to be questioned.  Two documents, both authored by defendant Feltner, claimed that plaintiff had

9   been "pressuring lower functioning inmates to make false allegations on other inmates and staff

10  members."  After approximately forty-five minutes of questioning, plaintiff was handed a copy of

11  the lock-up order and was placed in administrative segregation.  (Compl. at 7-8.)

12          The following day, defendant Machado held plaintiff's 114-D hearing to decide

13  whether plaintiff would be retained in administrative segregation.  Defendant Machado did not

14  allow plaintiff to present any witnesses and stated, "Maybe if you hadn't written that [CDC-602]

15  and contacted the judge about the EOP program, you wouldn't be here."  Ultimately, defendant

16  Machado ruled that plaintiff should be retained in administrative segregation.  (Compl. at 7-9.)

17          On November 13, 2008, plaintiff appeared before the Institutional Classification

18  board (ICC), which included defendants Lackner and Martel.  During his ICC hearing, plaintiff

19  was again denied an investigative employee, the presence of witnesses, and the opportunity to

20  present evidence.  The ICC concluded that plaintiff should be retained in administrative

21  segregation until a full investigation into the disciplinary charges could be completed.  (Compl.

22  at 9, Ex. H.)

23  /////

24

25      [2]  Mr. Keating serves as the special master in <u>Coleman v. Schwarzenegger</u>, No. CIV S-90-
    0520 LKK JFM P, 2009 WL 2430820 (E.D. Cal. Aug. 4, 2009) (ordering California to reduce its
26  prison population because inmates were not receiving constitutionally sufficient levels of medical
    and mental health care).

1    On November 19, 2008, plaintiff filed another CDC-602 grievance, alleging that

2    defendant Feltner and other prison officials were retaliating against him for exercising his First

3    Amendment rights.  (Compl. at 9, Ex. I.)

4    On November 24, 2008, plaintiff was released from administrative segregation.

5    However on December 14, 2008, plaintiff was returned to administrative segregation on another

6    charge of pressuring fellow inmates.  Although this charge was quickly dismissed, plaintiff was

7    found guilty of the original charges brought against him on November 9, 2008.  Consequently,

8    prison officials recommended that plaintiff be transferred to another institution.  (Compl. at 10-

9    11.)

10   On December 27, 2008, plaintiff wrote a letter to defendant Martel reiterating his

11   innocence and requesting that he not to be transferred.  On January 8, 2009, defendant Lackner

12   wrote in response indicating that "further review into the reasons for your Ad-Seg placement is

13   warranted . . . [and] you will be scheduled for ICC in the near future to determine your housing

14   and placement."  However, such a hearing was never held, and on February 26, 2009, plaintiff

15   was transferred to Pleasant Valley State Prison.  (Compl. at 11; Ex. L.)

16   Based upon these allegations, plaintiff claims that defendant Feltner violated his

17   rights under the First Amendment and Due Process Clause of the Fourteenth Amendment by

18   falsifying disciplinary charges against him and placing him in administrative segregation for the

19   purpose of retaliating against plaintiff for filing grievances.  Plaintiff also claims that defendants

20   Machado, Lackner, and Martel similarly violated his First Amendment and due process rights by

21   furthering defendant Feltner's retaliatory actions.  In terms of relief, plaintiff seeks an injunction,

22   declaratory relief and monetary damages.  (Compl. at 12-14.)

23                        **DEFENDANTS' MOTION TO DISMISS**

24   I.  Defendants' Motion

25   In moving to dismiss, defense counsel argues that plaintiff's due process and

26   retaliation claims against defendants Feltner, Machado, Lackner, and Martel are barred by the

1  favorable termination rule.  Counsel asserts that the underlying basis for plaintiff's claims is the

2  allegation that defendants falsified information in the rules violation report.  Counsel argues that

3  plaintiff's success on his claims would therefore imply the invalidity of the rules violation

4  conviction, pursuant to which plaintiff was assessed a sixty-day loss of behavioral credits.

5  According to defense counsel, plaintiff must first successfully challenge his disciplinary

6  conviction by way of a habeas corpus petition and not in a § 1983 civil rights action.  (Def.'s

7  Mot. to Dismiss at 4, 8-9.)

8           Defense counsel also contends that plaintiff fails to state a cognizable due process

9  claim against defendants Feltner, Machado, Martel and Lackner.  In this regard, counsel argues

10  that placement in administrative segregation does not, in of itself, implicate a protected liberty

11  interest and that plaintiff has not alleged facts demonstrating that his confinement constituted an

12  atypical and significant hardship.  Counsel argues further that even if plaintiff has a protected

13  liberty interest, he has received all the process that he was due.  Specifically, counsel emphasizes

14  that plaintiff was informed in writing of the reasons for his confinement in administrative

15  segregation and was given opportunities to present his views to a hearing committee.  (Def.'s

16  Mot. to Dismiss at 5-7.)

17           Defense counsel also asserts that defendants Martel and Lackner did not violate

18  plaintiff's First Amendment rights because their decision to retain him in administrative

19  segregation furthered a legitimate penological purpose.  Counsel argues that under California

20  prison regulations, retention of a prisoner in administrative segregation while a rules violation

21  report is pending ensures prison safety and security.  Moreover, counsel argues, the decisions

22  made by defendants Martel and Lackner were justifiable, especially in light of the fact that

23  plaintiff was ultimately found guilty of the rules violation.  (Def.'s Mot. to Dismiss at 9-10.)

24           Lastly, defense counsel claims that all the defendants are entitled to qualified

25  immunity because they did not violate plaintiff's constitutional rights.  (Def.'s Mot. to Dismiss at

26  10-11.)

1  II.  Plaintiff's Opposition

2           In opposition to defendants' motion to dismiss, plaintiff argues that his retaliation

3  and due process claims are not barred by the favorable termination rule because the disciplinary

4  sanctions at issue do not affect the overall length of his imprisonment.  Specifically, plaintiff

5  explains that he is serving two consecutive life sentences: one term of 17-years-to-life for second

6  degree murder and robbery, and another term of 25-years-to-life for possession of a weapon by a

7  state prisoner.  According to plaintiff, life prisoners convicted of second degree murder, such as

8  himself, are not eligible to accrue time credits.  Therefore, plaintiff argues that any forfeiture of

9  credits imposed by the disputed rules violation report is immaterial in his case and should not

10 operate so as to bar this civil rights action.  (Opp'n at 9-10.)

11          Plaintiff also argues that he states a cognizable procedural due process claim

12 against the defendants.  In plaintiff's view, his placement in administrative segregation

13 implicates a protected liberty interest because it was imposed by prison officials relying on false

14 information.  Plaintiff argues further that he was deprived of a protected liberty interest without

15 adequate procedural safeguards because under California prison regulations, prison officials are

16 required to provide him with a staff assistant, an investigative employee, and an opportunity to

17 present witnesses before placing him in administrative segregation.  (Opp'n at 13-14.)

18          Moreover, plaintiff  asserts for the first time that his complaint implicitly includes

19 a substantive due process claim.  Specifically, plaintiff maintains that the defendants violated his

20 substantive due process rights by engaging in "criminal misconduct and then attempting to shield

21 such misconduct under the mantle of 'penological justification.'" (Opp'n at 12-13.)

22          Plaintiff also contests defense counsel's argument that defendants Lackner and

23 Martel did not violate his First Amendment rights to be free from retaliation because defendants'

24 decision to retain him in administrative segregation furthered a legitimate penological purpose.

25 Specifically, plaintiff argues that once the second intimidation charge against him was dismissed,

26 he should have been released from administrative segregation.  Instead, he was retained in

1   administrative segregation thereafter without any penological justification.  (Opp'n at 11.)

2           Finally, plaintiff contends that defendants are not entitled to qualified immunity.

3   Plaintiff argues that defendant Feltner violated clearly established law when he use falsified

4   disciplinary charges in retaliation against plaintiff for filing EOP-related grievances.  Regarding

5   the other defendants, plaintiff argues that they too violated clearly established law because they

6   were complicit in defendant Feltner's retaliatory scheme.  (Opp'n at 14-15.)

7   III.  Defendants' Reply

8           In reply, defense counsel reiterates many of the arguments made in the pending

9   motion to dismiss.  In particular, counsel restates that placement in administrative segregation

10  based upon false information does not implicate a protected liberty interest and that, even if it

11  did, plaintiff was afforded all the process he was due.

12  IV.  Defendants' Supplemental Brief

13          As noted above, on May 20, 2010, the court ordered defendants to file a

14  supplemental brief with respect to their argument that plaintiff's claims were barred by the

15  favorable termination rule.  Specifically, the court ordered defendants to explain: (1) whether

16  plaintiff is able to accrue time credits under California law; and (2) what effect any loss of time

17  credits has on the overall length of plaintiff's sentence.  On June 16, 2010, defendants filed a

18  timely supplemental brief.  Therein, defense counsel concedes that although plaintiff is entitled to

19  earn time credits, any loss of credits by plaintiff has no effect on the overall length of his

20  sentence.  (Supp. Br. at 2.)

21                              **ANALYSIS**

22  I.  Legal Standards Applicable to a Motion to Dismiss Pursuant to Rule 12(b)(6)

23          A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

24  Procedure tests the sufficiency of the complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720

25  F.2d 578, 581 (9th Cir. 1983).  Dismissal of the complaint, or any claim within it, "can be based

26  on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

                                    7

cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In determining whether a pleading states a claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In the context of a motion to dismiss, the court also resolves doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972); Klingele v. Eikenberry, 849 F.2d 409, 413 (9th Cir. 1988). The court has an obligation, particularly in civil rights actions, to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

II.  Discussion

A.  The Favorable Termination Rule

In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court set forth what has become known as the "favorable termination" rule. Under Heck, when a §1983

1    claim would necessarily implicate the validity of the prisoner's conviction or sentence, "a §1983

2    plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged

3    by executive order, declared invalid by a state tribunal authorized to make such determination, or

4    called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. This

5    is because suits challenging the fact or duration of a prisoner's confinement fall within the

6    traditional scope of habeas corpus and not of a §1983 action. See Preiser v. Rodriguez, 411 U.S.

7    475, 500 (1973).

8            Application of the favorable termination rule "turns solely on whether a successful

9    §1983 action would necessarily render invalid a conviction, sentence, or administrative sanction

10   that affected the length of the prisoner's confinement." Ramirez v. Galaza, 334 F.3d 850, 856

11   (9th Cir. 2003). See also Jenkins v. Haubert, 179 F.3d 19, 27 (2d Cir. 1999) ("[A] § 1983 suit by

12   a prisoner . . . challenging the validity of a disciplinary or administrative sanction that does not

13   affect the overall length of the prisoner's confinement is not barred by Heck.") In this regard, a

14   prisoner challenging a prison disciplinary sanction involving the deprivation of credits generally

15   must, under the favorable termination rule, seek relief in an action for habeas corpus because the

16   loss of time credits typically lengthens the duration of a prisoner's confinement. See Edwards v.

17   Balisok, 520 U.S. 641, 648 (1997).

18           In this case, the court finds that plaintiff's §1983 action is not barred by the

19   favorable termination rule. It is true that the disciplinary conviction at issue resulted in the

20   imposition of a sixty-day loss of credits upon plaintiff. If plaintiff was serving a sentence of a

21   term of specific years, such a sanction would necessarily lengthen the duration of his

22   confinement by sixty days and would required plaintiff, under the favorable termination rule, to

23   invalidate the disciplinary sanction in a habeas proceeding before bringing this §1983 action.

24   See Edwards, 520 U.S. at 648. However, plaintiff is not serving a definite term. Rather, plaintiff

25   is serving two consecutive indeterminate life sentences. The loss of credits cannot extend

26   plaintiff's maximum term, which is already life in prison. Finally, defense counsel concedes that

1   any loss of credits by plaintiff has no effect on the length of his sentence.  Under these

2   circumstances, defendants cannot demonstrate that plaintiff's forfeiture of sixty days of time

3   credits will affect the length of his confinement.  See Ramirez, 334 F.3d at 858.[3]

4          Accordingly, because defendants have failed to demonstrate how the loss of time credits

5   imposed by the disciplinary conviction at issue can have any impact on the overall length of

6   plaintiff's confinement, defendants' motion to dismiss plaintiff's complaint as barred by the

7   favorable termination rule should be denied.  See Ramirez, 334 F.3d at 858 ("[W]here . . . a

8   successful § 1983 action would not necessarily result in an earlier release from incarceration . . .

9   the favorable termination rule of Heck and Edwards does not apply."); Tucker v. Monroe, No.

10  2:06-cv-58, 2007 WL 839993, at *1 (W.D. Mich. Mar. 15, 2007) (rejecting a Heck bar argument

11  where the plaintiff asserted "that he is serving a parolable life sentence for second degree murder

12  and is not eligible to earn good time or disciplinary credits"); see also Thomas v. Wong, No. C

13  09-0733 JSW (PR), 2010 WL 1233909, at *3-4 (N.D. Cal. Mar. 26, 2010) (holding that habeas

14  jurisdiction was absent because the disputed rules violation, which imposed a 30-day loss of time

15  credits, did not inevitably affect the duration of petitioner's indeterminate sentence; dismissing

16  the habeas action without prejudice to petitioner bringing his claims in a § 1983 action).

17  /////

18

19          [3] Nor will the loss of credits have any impact on plaintiff's eligibility for release on
    parole.  Under California law, plaintiff's earned credits may be applied to reduce his minimum
20  eligible parole date (MEPD).  See In re Dayan, 231 Cal. App.3d 184, 188 (1991); see also Cal.
    Code Regs., tit. 15, § 3000; Cal. Penal. Code § 190(a).  However, plaintiff's MEPD does not set
21  an actual parole release date.  Rather, the MEPD determines when plaintiff may appear before the
    Board of Parole Hearings (BPH) for his first parole suitability hearing.  The BPH, in turn, has the
22  exclusive authority to grant plaintiff parole and set any actual parole release date.  Thus, as one
    court has recently explained,

23          [A]ny credits earned [by a prisoner] on his indeterminate life
            sentences can only affect the ultimate establishment of a MEPD;
24          they can have no real impact on the actual sentence eventually set
            for [the prisoner] or on his eventual release date on parole, should
25          that time ever come.

26  Burton v. Adams, 1:09-cv-0354 JLT HC, 2010 WL 703182, at *7 (E.D. Cal. Feb. 25, 2010).

1          B.  Due Process

2          The Due Process Clause of the Fourteenth Amendment prohibits state action that

3   deprives a person of life, liberty, or property without due process of law.  U.S. Const. amend

4   XIV.  A plaintiff alleging a procedural due process violation must first demonstrate that he was

5   deprived of a liberty or property interest protected by the Due Process Clause and then show that

6   the procedures attendant upon the deprivation were not constitutionally sufficient.  Ky. Dep't of

7   Corr. v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th

8   Cir. 2002); Brewster v. Bd. of Education., 149 F.3d 971, 982 (9th Cir. 1998).  In the context of a

9   prison disciplinary action, a prisoner may be deprived of a protected liberty interest if the action

10  in dispute resulted in the imposition of an "atypical and significant hardship on [him] in relation

11  to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995). See also

12  Neal v. Shimoda, 131 F.3d 818, 827-29 (9th Cir. 1997).

13         In this case, the court finds that plaintiff has failed to allege facts establishing a

14  prima facie due process violation.  In particular, plaintiff has not alleged facts in his complaint

15  demonstrating that his confinement in administrative segregation constituted "an atypical and

16  significant hardship on [him] in relation to the ordinary incidents of prison life."  Sandin, 515

17  U.S. at 484.  Plaintiff's complaint does not present any facts showing that the conditions of his

18  confinement in administrative segregation amounted to "a major disruption in his environment"

19  or were more burdensome than the conditions faced by the general population.  Id. at 486.  At

20  most, plaintiff asserts that he was forced to spend four months in administrative segregation.

21  However, spending four months in administrative segregation is insufficient, in of itself, to

22  establish "the type of atypical, significant deprivation [that] might conceivably create a liberty

23  interest."  Id.  See also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (holding that

24  placement in administrative segregation is insufficient to state a due process claim); Saenz v.

25  Spearman, No. 1:09-cv-0557 YNP PC, 2009 WL 3233799, at *9-11 (E.D. Cal. Oct. 1, 2009)

26  (finding that one-year confinement in administrative segregation did not, in of itself, implicate a

11

1   protected liberty interest); <u>Del Rio v. Schwarzenegger</u>, No. EDCV 09-214 TJH (MAN), 2009

2   WL 1657438, at *9 (C.D. Cal. June 10, 2009) (same).

3           Even assuming plaintiff's placement in administrative segregation did implicate a

4   protected liberty interest, plaintiff was afforded all the process he was due.  Plaintiff alleges in his

5   complaint that he was not provided with an investigative employee, witnesses, or the opportunity

6   to present evidence at his 114-D hearing on November 10, 2008 and at his ICC hearing three

7   days later.  (Compl. at 9.)  Such protections and procedures, however, are not required at the

8   identified stages of the prison disciplinary process.  When prison officials are deciding whether

9   to place or retain a prisoner in administrative segregation pending an investigation into

10  disciplinary charges, due process requires only the following:

11          Prison officials must hold an informal nonadversary hearing within
            a reasonable time after the prisoner is segregated.  The prison
12          officials must inform the prisoner of the charges against the
            prisoner or their reasons for considering segregation.  Prison
13          officials must allow the prisoner to present his views.

14          We [the Ninth Circuit] specifically find that the *due process clause*
            does not require detailed written notice of charges, representation
15          by counsel or counsel-substitute, an opportunity to present
            witnesses, or a written decision describing the reasons for placing
16          the prisoner in administrative segregation.  We also find that due
            process does not require disclosure of the identity of any person
17          providing information leading to the placement of a prisoner in
            administrative segregation.

18

19  <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1100-01 (9th Cir. 1986).  <u>See also</u> <u>Hewitt v. Helms</u>, 459

20  U.S. 460, 476 (1983) ("[A]n informal, nonadversary evidentiary review is sufficient . . . to

21  confine an inmate to administrative segregation pending completion of [any] investigation into

22  misconduct charges against him.").

23          Here, plaintiff was placed in administrative segregation on November 9, 2008,

24  pending an investigation into accusations that he was pressuring inmates into making false

25  allegations against other inmates and staff members.  (Compl. at 8.)  At that point, due process

26  required only that prison officials hold an "informal nonadversary hearing within a reasonable

                                                    12

1   time" to inform plaintiff of the charges and give him an opportunity to present his views.

2   Toussaint, 801 F.2d at 1100-01.  Such a hearing was held the following day when plaintiff

3   appeared for his 114-D hearing.  (Compl. at 9.)  At that time plaintiff was provided with the

4   reasons for his placement in administrative segregation and was given an opportunity to present

5   his views.  (See id., Ex. G.)  Moreover, three days later on November 13, 2008, plaintiff appeared

6   for another hearing before the ICC board to determine whether he should be retained in

7   administrative segregation.  (Id. at 9.)  At the ICC hearing, plaintiff was once again provided with

8   the reasons for his segregation and was given an opportunity to present his views.  (Id., Ex. H.)

9   Therefore, at those early stages of the prison disciplinary process, plaintiff was afforded all the

10  procedural protection he was entitled to under the Due Process Clause.[4]

11          Finally, to the extent that plaintiff's complaint can be read as alleging a

12  substantive due process claim, such a claim is to be assessed under First Amendment standards.

13  In this regard, where a particular Amendment of the U.S. Constitution provides the explicit

14  textual source of a constitutional protection, that Amendment, and "not the mere generalized

15  notion of substantive due process, must be the guide for analyzing [those] claims."  Graham v.

16  Connor, 490 U.S. 386, 395 (1989).  See also Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996)

17  (citations omitted).  Here, the thrust of plaintiff's allegations is that defendants have made false

18  accusations against him in retaliation for his filing of grievances and complaints regarding the

19  abuse of EOP inmates.  Such a claim fall squarely within the protections of the First Amendment.

20  See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (reaffirming that prisoners have

21

22          [4] Plaintiff does not appear to challenge the procedural adequacy of his actual disciplinary

23  hearing, at which time he would have been entitled to greater procedural protections than those
    set forth in Toussaint.  See Wolff v. McDonnell, 418 U.S. 539, 564-70 (1974).  Nonetheless, had

24  plaintiff made such a claim, the court would have again concluded that he was afforded all the
    process he was due.  Specifically, according to his won complaint plaintiff was (1) provided

25  written notice of all the charges against him; (2) afforded more than 24 hours to prepare his
    defense; (3) given a written statement regarding the evidence on which the factfinders relied on;

26  (4) allowed to request witnesses; and (5) deemed competent to understand the nature of the
    charges against him.  (Compl., Ex. K.)

13

1  cognizable claims under § 1983 and the First Amendment regarding retaliatory actions by prison

2  officials).

3          Accordingly, for all the reasons discussed above, defendants' motion to dismiss

4  plaintiff's due process claims should be granted.

5          C.  Retaliation

6          Under the First Amendment, prison officials may not retaliate against prisoners

7  for initiating litigation or filing administrative grievances.  Rhodes v. Robinson, 408 F.3d 559,

8  568 (9th Cir. 2005).  A viable claim of First Amendment retaliation entails five basic elements:

9  (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3)

10  that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

11  First Amendment rights, and (5) the action did not reasonably advance a legitimate penological

12  purpose.  Id.; Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994).

13          Although the court accepts as true plaintiff's allegations on a motion to dismiss,

14  the court need not accept as true allegations that are conclusory or inferences that are

15  unreasonable.  W. Mining Council, 643 F.2d at 624.  Here, the court finds plaintiff' allegations

16  against defendants Lackner and Martel to be wholly conclusory and insufficient to establish that

17  the actions of those defendants did not advance a legitimate penological purpose.  In his

18  complaint, plaintiff merely alleges that the actions of defendant Martel were retaliatory and did

19  not advance any legitimate penological purpose because Martel had "misgivings about the

20  charges against plaintiff" yet decided to retain plaintiff in segregation nonetheless.  (Compl. at 9.)

21  In addition, plaintiff argues in his opposition to the pending motion to dismiss that defendant

22  Martel failed to release him from segregation immediately after he was found not guilty on the

23  second set of disciplinary charges.  (Opp'n at 11.)  Plaintiff's allegations in this regard represent

24  no more than pure speculation that defendant Martel acted with a retaliatory motive and without

25  advancing a legitimate penological purpose.

26  /////

14

1    Plaintiff's allegations against defendant Lackner are equally lacking.  Plaintiff's

2    only allegation against defendant Lackner is that she wrote him a letter, wherein she stated that

3    further review and an ICC hearing would be conducted into the reasons for plaintiff's placement

4    in administrative segregation.  (Compl. at 11.)  According to plaintiff, however, such a hearing

5    was never conducted and his transfer to a different prison was not rescinded.  (Id.)  From this

6    alone, plaintiff concludes that defendant Lackner sought to retaliate against him for filing EOP-

7    related grievances.  Again, without more, plaintiff's allegations against defendant Lackner do not

8    rise above the purely speculative level.  See Bell Atlantic Corp., 550 U.S. at 555 (2007).

9    Accordingly, because plaintiff's allegations against defendants Lackner and

10   Martel are wholly conclusory, the court recommends that plaintiff's First Amendment retaliation

11   claims against these defendants be dismissed.

12        D.  Qualified Immunity [5]

13   Determining whether an official is entitled to qualified immunity requires a two-

14   part analysis.  See Saucier v. Katz, 533 U.S. 194, 201 (2001); Ramirez v. City of Buena Park,

15   560 F.3d 1012, 1020 (9th Cir. 2009).  First, a court must decide whether the facts alleged, when

16   taken in the light most favorable to plaintiff, demonstrate that the defendants' conduct violated a

17   statutory or constitutional right.  Saucier, 533 U.S. at 201-02.  Second, the court must determine

18   whether the statutory or constitutional right alleged by plaintiff was "clearly established."  Id. at

19   201.  A right is "clearly established" for the purpose of qualified immunity if "'it would be clear

20   to a reasonable [prison official] that his conduct was unlawful in the situation he confronted' . . .

21   or whether the state of the law [at the time of the alleged violation] gave 'fair warning' to [him]

22   that [his] conduct was unconstitutional."  Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002)

23

24        [5] In light of the recommendations that plaintiff's due process claims against all
25   defendants and plaintiff's First Amendment retaliation claims against defendants Lackner and
     Martel be dismissed, the court will only address defendants' qualified immunity argument as it
26   applies to plaintiff's First Amendment retaliation claims brought against defendants Feltner and
     Machado.

1    (quoting <u>Saucier</u>, 533 U.S. at 202).  Because qualified immunity is an affirmative defense, the

2    initial burden of proof lies with the prison official asserting the defense.  <u>See</u> <u>Houghton v. South</u>,

3    965 F.2d 1532, 1536 (9th Cir. 1992).

4            Although it is often beneficial to approach the two-part inquiry in the sequence

5    prescribed above, it is not mandatory.  <u>Pearson v. Callahan</u>, 555 U.S. ___, ___, 129 S. Ct. 808,

6    815 (2009).  A district court has "discretion in deciding which of the two prongs of the qualified

7    immunity analysis should be addressed first."  <u>Id</u>.  <u>See</u> <u>also</u> <u>Ramirez</u>, 560 F.3d at 1020.  The

8    court may grant defendants qualified immunity at any point the court answers either prong of the

9    inquiry in the negative.  <u>See</u> <u>e.g.</u>, <u>Tibbetts v. Kulongoski</u>, 567 F.3d 529, 536-39 (9th Cir. 2009)

10   (bypassing the first prong and granting defendants qualified immunity because plaintiff's due

11   process right was not clearly established at the time of alleged violation).

12           In this case, plaintiff's First Amendment right to file inmate grievances free from

13   prison official retaliation was clearly established by 2008, the year of the alleged violations.  <u>See</u>

14   <u>Pratt</u>, 65 F.3d at 806 ("[T]he prohibition against retaliatory punishment is clearly established law

15   in the Ninth Circuit, for qualified immunity purposes.").  Thus, defendants Feltner and Machado

16   are entitled to qualified immunity only if plaintiff has failed to allege facts that, if proven, would

17   sufficiently demonstrate that defendants' conduct violated his First Amendment rights.  <u>See</u>

18   <u>Saucier</u>, 533 U.S. at 201.

19           The court finds that plaintiff's allegations against defendant Feltner, if proven to

20   be true, establish that his conduct violated plaintiff's First Amendment rights.  Specifically, in his

21   complaint plaintiff alleges that defendant Feltner warned him not to complain about EOP inmate

22   abuse, especially because one of the individuals being accused by plaintiff was defendant

23   Feltner's "inside man." (Compl. at 4.)  Plaintiff further alleges that when Ms. Scott issued her

24   memo regarding EOP inmate abuse, defendant Feltner became outraged and immediately

25   suspected plaintiff of being behind all of the complaints.  (<u>Id</u>. at 5.)  According to plaintiff,

26   defendant Feltner warned plaintiff that he was "going to get burned very badly playing with fire."

1   (Id. at 6.)  Plaintiff has alleged that after he persisted in filing an inmate grievance regarding the

2   EOP inmate abuse, defendant Feltner issued false disciplinary charges against him and had him

3   placed in administrative segregation.  (Id. at 8.)  In plaintiff's view, defendant Feltner's

4   retaliatory actions were designed to chill plaintiff's complaints and therefore did not serve any

5   legitimate penological purpose.  (See id. at 13.)

6          Similarly, the court finds that plaintiff's allegations against defendant Machado, if

7   proven to be true, also establish that his conduct violated plaintiff's First Amendment rights.  In

8   particular, plaintiff alleges in his complaint that defendant Machado knew that defendant Feltner

9   falsified the disciplinary charges against plaintiff.  (Compl. at 9.)  Plaintiff alleges that defendant

10  Machado nevertheless decided to retain him in administrative segregation.  (Id.)  According to

11  plaintiff, when he protested being retained in segregation, defendant Machado responded,

12  "Maybe if you hadn't written that [CDC-602] and contacted the judge about the EOP program,

13  you wouldn't be here."  (Id.)  In plaintiff's view, defendant Machado's statement shows that his

14  actions were designed to further defendant Feltner's retaliatory scheme and were not intended to

15  advance any legitimate penological purpose.  (See id. at 12.)

16         Accordingly, because plaintiff's rights were clearly established at the time and

17  because plaintiff's allegations, if proven true, demonstrate that the conduct of defendants Feltner

18  and Machado violated his rights, these two defendants are not entitled to dismissal of plaintiff's

19  First Amendment retaliation claims on qualified immunity grounds.

20                                    **CONCLUSION**

21         Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to

22  randomly assign a United States District Judge to this action.

23         IT IS HEREBY RECOMMENDED that defendants' December 18, 2009 motion

24  to dismiss (Doc. No. 13) be granted in part and denied in part as follows:

25         1.  Defendants' motion to dismiss plaintiff's complaint as barred by the favorable

26  termination rule be denied;

17

1        2.  Defendants' motion to dismiss plaintiff's Fourteenth Amendment Due Process

2   Clause claims against defendants Feltner, Machado, Lackner and Martel be granted;

3        3.  Defendants' motion to dismiss plaintiff's First Amendment retaliation claims

4   against defendants Lackner and Martel be granted; and

5        4.  Defendants' motion to dismiss plaintiff's First Amendment retaliation claims

6   against defendants Feltner and Machado on the grounds of qualified immunity be denied.

7        These findings and recommendations are submitted to the United States District

8   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

9   one days after being served with these findings and recommendations, any party may file written

10   objections with the court and serve a copy on all parties.  Such a document should be captioned

11   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12   shall be served and filed within fourteen days after service of the objections.  The parties are

13   advised that failure to file objections within the specified time may waive the right to appeal the

14   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

15   DATED: July 17, 2010.

16

17                          _Dale A. Drozd_

18                         DALE A. DROZD
                         UNITED STATES MAGISTRATE JUDGE

19   DAD:sj
       vand1576.56

20

21

22

23

24

25

26